**STALWART LAW GROUP**
Dylan Ruga (DR1308)
David Angeloff (5470968)
41 East 11th Street, 11th Fl.
New York, New York 10003
Phone:  (212) 651-9070
Email:  dylan@stalwartlaw.com

*Attorneys for Plaintiff and Proposed Class Representative*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

| | |
|---|---|
| RYAN M. KULL LICENSED CLINICAL SOCIAL WORK LLC, a New York limited liability company, on behalf of itself and all others similarly situated, | Civil Action No. 1:20-cv-3138 |
| Plaintiff, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| -against- | |
| CHASE BANK USA, N.A., a New York Corporation, JP MORGAN CHASE AND CO., a Delaware Corporation; and DOES 1-50, inclusive, | |
| Defendants. | |

Plaintiff RYAN M. KULL LICENSED CLINICAL SOCIAL WORK LLC brings this class action complaint on behalf of itself and those similarly situated (Hereinafter, collectively, "PLAINTIFF SMALL BUSINESS OWNERS") against Defendants CHASE BANK USA, N.A., JP MORGAN CHASE AND CO., and DOES 1-50 (Hereinafter, collectively, "CHASE BANK" or "DEFENDANT BANK"), inclusive, to stop Defendants' unlawful conduct and to obtain redress for all persons and businesses injured by Defendants' conduct. For its class action complaint, Plaintiff alleges as follows based upon its personal knowledge and upon information and belief, including investigation conducted by its attorneys:

## INTRODUCTION

1.      JP Morgan Chase and CHASE BANK have, once again, prioritized corporate greed at the expense of its small business customers.

2.      Rather than processing Paycheck Protection Program ("PPP") applications on a first-come, first-served basis as required by the rules governing that program, CHASE BANK prioritized loan applications seeking higher loan amounts because processing those applications first generated larger loan origination fees for the banks.

3.      Making matters worse, CHASE BANK concealed from the public that it was reshuffling the PPP applications it received and prioritizing the applications that would make the bank the most money. As a result, thousands of small businesses—including the plaintiff in this action—trusted that Chase Bank would process the applications on a first come, first served basis.

4.      Had CHASE BANK been honest, small businesses could have (and would have) submitted their PPP applications to other financial institutions that were processing applications on a first-come, first-served basis.

5.      As a result of CHASE BANK's dishonest and deplorable behavior, however, thousands of small businesses that were entitled to loans under the PPP were left with nothing because CHASE BANK chose to maximize its loan origination fees rather than comply with the rules of the program and serve the needs of its small business customers. CHASE BANK executives gamed the system to enrich themselves with tax dollars, at the expense of small business owners who the PPP funds were intended to benefit, to line their own pockets, during a time of national crisis. Quite simply, the banks knew better, but put profits over their duties and the wellbeing of the Country during a time of national crisis.

## BACKGROUND

6.      Small businesses are the backbone of the American economy. Indeed, about half of the people that work in America work for a small business. These businesses and their employees have been hit hard due to the global COVD-19 pandemic.

7.      On March 11, 2020, the COVID-19 outbreak was characterized as a pandemic by the World Health Organization (WHO). On March 20, 2020, Governor Andrew Cuomo issued an executive order mandating the closure of all non-essential businesses statewide in order to slow the spread of COVID-19. New York State has been one of the states hit hardest by COVID-19 in the United States to date.

8.      On March 25, 2020, in response to the economic fallout of the COVID-19 crisis, The United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. The CARES Act passed the House the next day and was signed into law by President Trump on March 27, 2020. The legislation included $377 billion in federally guaranteed loans to small businesses and established a $500 billion government lending program for distressed companies. Unprecedented in size and scope, the legislation was the largest-ever

economic stimulus package in U.S. history, amounting to 10% of the total U.S. gross domestic product.

9.      As part of the CARES Act, the Federal Government Created a $349 billion loan program, called the "Paycheck Protection Program" (PPP), for small businesses with funds available for loans originated from February 15 through June 30, 2020. The PPP intended to provide American small businesses with eight weeks of cash-flow assistance through 100 percent federally guaranteed loans. The loans are backed by the United States Small Business Administration (SBA). The SBA is a United States government agency that provides support to entrepreneurs and small businesses. The loans were backed by the Federal Government and SBA but administered by private banks. One of the most important aspects of the PPP loans is that the terms provide criteria for loan forgiveness through a process that incentivizes companies to retain, and not "lay off", employees during this crisis.

10.     It was the express intent of the US Senate and Congress in passing the CARES Act that the funds be used to support small businesses, particularly rural businesses, veteran owned businesses, woman owned businesses, and businesses owned by socially and economically disadvantaged persons.[1] The text of the Bill itself provides "It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years."

---

[1] H.R.748(P)(iv) - CARES Act

11.    At President Trump's signing of the CARES Act, ranking member of the House Small Business Committee Representative Steve Chabot (R-Ohio) praised the legislation as giving small businesses a great chance to reopen.[2]  Senator Marco Rubio (R-Fl), Chairman of the Senate Small Business and Entrepreneurship stated that the "bipartisan small business package…will provide emergency relief so that millions of American workers can keep their jobs and millions of small businesses can stay open."[3] Senate Majority Whip, Senator John Thune (R-SD) stated that the funds provided by the CARES Act "will deliver relief to small businesses to help them and their workers weather this storm."[4]

12.    The United States Department of the Treasury announced that starting April 3, 2020, small businesses and sole proprietorships could apply for and receive loans to cover their payroll and other certain expenses through existing SBA lenders.[5] Starting April 10, 2020, independent contractors and self-employed individuals could apply.[6]

13.    Within this context, DEFENDANT BANK served as an intermediary between small businesses and federal funds. Not only did DEFENDANT BANK encourage PLAINTIFF SMALL BUSINESS OWNERS to apply, they encouraged PLAINTIFF SMALL BUSINESS OWNERS to act fast.

14.    DEFENDANT BANK communicated to the public that they intended to follow the law and direct the PPP funds to the small businesses that Congress and the Senate intended to help and process the applications in the order received. Chase Bank said in online communications to

---

[2] REMARKS BY PRESIDENT TRUMP AT SIGNING OF H.R.748, THE CARES ACT, 2020 WL 1485787, at *67
[3] (Sen. Rubio, Press Release, 3/25/2020 https://www.rubio.senate.gov/public/index.cfm/press-releases?ContentRecord_id=D08E8A75-546A-4C56-A890-B948048E9B5C)
[4] (Sen. Thune, Press Release, 3/25/2020 https://www.thune.senate.gov/public/index.cfm/press-releases?ID=CA914CF0-5C3D-4A02-B6F2-84925B5467BD)
[5] https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf
[6] *Id.*

its applicants: "We're reviewing applications sequentially" and "we cannot prioritize applications" among other representations.

15.     Evidently, time was of the essence. In fact, the Small Business Administration Regulations that govern the PPP funds mandated that the funds be distributed "first come, first served."[7] There was a line, a "queue". If you applied sooner rather than later, according to the SBA regulations your place in line *should* have been considered, and your loans issued accordingly, "first-come, first-served". However, in contravention with its implied and explicit representations, and their own representations to the public, this was not how the DEFENDANT BANK operated.

16.     The terms of the PPP loans only allow for each small-business borrower to obtain a single SBA backed loan through the PPP. The SBA Regulations provide: "The Administrator, in consultation with the Secretary, determined that no eligible borrower may receive more than one PPP loan. This means that if you apply for a PPP loan you should consider applying for the maximum amount."[8] Further, on information and belief, when a borrower applied for multiple PPP loans through different lenders, it triggered a law enforcement fraud alert. Finally, on April 4, 2020, Defendant Bank posted on their website, as part of their conditions to apply and receive PPP funding: "You haven't already received a Paycheck Protection Program loan from Chase and you haven't applied for one from another financial institution." Therefore, PPP borrowers who applied through Defendant Bank made a single application through that single financial institution, putting "all their eggs in one basket" and relying on DEFENDANT BANK.

17.     The U.S. Small Business Administration reported that, as of April 16, 2020, the Number One Lender of PPP loans approved 27,307 loans, averaging approximately $515,304 per

---

[7] SMALL BUSINESS ADMINISTRATION Interim Final Rule § *m.* [Docket No. SBA-2020-0015] 13 CFR Part 120 Business Loan Program Temporary Changes; Paycheck Protection Program RIN 3245-AH34.
[8] *Id.* at § *k.*

loan. The Number Fifteen Lender of PPP loans approved almost twice as many loans, 40,746, averaging $72,803 per loan. DEFENDANT BANK received several hundreds of thousands of applications and chose to prioritize higher loans for bigger companies, despite the SBA requiring a first-come, first-serve distribution of funds. As a result of their covert lending prioritization practices, preferencing larger "small businesses" over true small businesses, DEFENDANT BANK received a huge windfall in origination fees while hundreds of thousands of loan applicants got nothing.

18.     Data provided by the U.S. Small Business Administration reveals that, rather than processing PPP loan applications on a "first come, first served" basis as required, DEFENDANT BANK prioritized and front-loaded applications with higher loan amounts. This is shown by comparing data from loans processed between April 3, 2020 (when the PPP started) and April 13th versus data between April 13th and April 16th (when the program ran out of money).

19.     Here is a breakdown of the loans processed through April 13, 2020[9]:

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 725,058 | $37,178,984,187 | 70.05% | 15.02% |
| >$150K - $350K | 156,590 | $35,735,615,983 | 15.13% | 14.44% |
| >$350K - $1M | 102,473 | $59,291,602,643 | 9.90% | 23.95% |
| >$1M - $2M | 31,176 | $43,278,883,532 | 3.01% | 17.48% |
| >$2M - $5M | 16,516 | $49,288,997,593 | 1.60% | 19.91% |
| >$5M | 3,273 | $22,769,309,582 | 0.32% | 9.20% |

//

//

//

[9] https://www.sba.gov/sites/default/files/2020-04/PPP%20Report%20SBA%204.14.20%20%20-%20%20%20Read-Only.pdf

20.    Here is the same information, updated through April 16, 2020[10]:

| Loan Size | Approved Loans | Approved Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $58,321,791,761 | 74.03% | 17.04% |
| >$150K - $350K | 224,061 | $50,926,354,675 | 13.49% | 14.88% |
| >$350K - $1M | 140,197 | $80,628,410,796 | 8.44% | 23.56% |
| >$1M - $2M | 41,238 | $57,187,983,464 | 2.48% | 16.71% |
| >$2M - $5M | 21,566 | $64,315,474,825 | 1.30% | 18.79% |
| >$5M | 4,412 | $30,897,983,582 | 0.27% | 9.03% |

21.    Comparing the April 13 data to the April 16 data shows that—in the last three days of the PPP—banks processed loan applications for $150,000 and under at <u>twice</u> the rate of larger loans:

| Loan Size | 4/13/2020 Approved Loans | 4/16/2020 Approved Loans | % Change |
|---|---|---|---|
| $150K and Under | 725,058 | 1,229,893 | 70% |
| >$150K - $350K | 156,590 | 224,061 | 43% |
| >$350K - $1M | 102,473 | 140,197 | 37% |
| >$1M - $2M | 31,176 | 41,238 | 32% |
| >$2M - $5M | 16,516 | 21,566 | 31% |
| >$5M | 3,273 | 4,412 | 35% |

22.    This data demonstrates that banks front-loaded applications for the largest loans because, if applications were being processed on a first-come, first-served basis as required, the percentage change of applications submitted in the last three days of the program would be consistent among all application types.

23.    DEFENDANT BANK chose to prioritize the applications with higher loan amounts because processing those applications first resulted in larger origination fees for the DEFENDANT BANK.

---

[10] https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf

24.     Specifically, DEFENDANT BANK was entitled under the PPP to receive origination fees of 5% on loans up to $350,000; 3% on loans between $350,000 and $2 million; and 1% on loans between $2 million and $10 million.[11] That means that DEFENDANT BANK could make up to $17,500 for processing loans up to $350,000; up to $60,000 for processing loans between $350,000 and $2 million; and up to $100,000 for processing loans between $2 million and $10 million.

25.     Upon information and belief, DEFENDANT BANK prioritized those PPP loans that earned them the highest origination fees rather than processing PPP loan applications on a "first come, first served" basis as required. In doing so, DEFENDANT BANK enriched themselves at the expense of American taxpayers, undercut the intent of Congress and the Senate, undercut the dollar-per-dollar effectiveness of the CARES Act itself, and caused irreparable harm to countless small businesses and workers who actually needed the temporary funding of the PPP loans to make payroll, retain their employees, and stay afloat.

26.     DEFENDANT BANK knew that they received more PPP applications than they would be able to process but concealed from PLAINTIFF SMALL BUSINESS OWNERS and the general public that they were reshuffling the applications they received to maximize profits for the bank.

27.     Had DEFENDANT BANK informed PLAINTIFF SMALL BUSINESS OWNERS and the general public of the truth, then PLAINTIFF SMALL BUSINESS OWNERS would have submitted their PPP applications to other lending institutions that were processing applications on a first come, first served basis.

---

[11]     https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf

28.     The Plaintiff, on behalf of itself and the proposed class (as defined below), seeks

an injunction requiring Defendants to cease the unlawful activities alleged herein and an award

of damages to itself and all members of the class, together with the costs of suit and reasonable

attorneys' fees.

JURISDICTION AND VENUE

29.     The Court has original jurisdiction over this Action under the Class Action

Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) at least some

members of the proposed Class have different citizenship from Defendant(s); and (2) the claims

of the proposed Class Members exceed $5,000,000 in the aggregate.

30.     This Court has personal jurisdiction over Defendants because Defendants do

business in this District and a substantial number of the events giving rise to the claims alleged

herein took place in New York.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the alleged claims occurred in this

District given that Plaintiff applied for the subject PPP loans while in this District and

Defendants marketed, promoted, and took applications for the PPP loans in this District.

**PARTIES**

32.     Plaintiff RYAN M. KULL LICENSED CLINICAL SOCIAL WORK LLC

("Plaintiff") is a New York limited liability company, located at 120 West 31st Street, Fl 3, New

York, NY 10001, and owned and operated by Ryan Kull. Plaintiff provides psychotherapy and

mental health services, does education and training on mental health issues, and is involved in

mental health research. Plaintiff employed 24 employees before the COVID-19 crisis began.

Plaintiff meets the criteria for funding under the PPP, and in reliance on Defendants' false and

deceptive advertising, marketing, and loan application processing schemes, made its single permitted application for loan assistance through the PPP with DEFENDANT BANK.

33.     Upon information and belief, and at all times hereinafter mentioned, Defendant CHASE BANK USA, N.A. is a corporation established under the laws of the State of New York, with its principal place of business located in New York.

34.     Upon information and belief, and at all times hereinafter mentioned, Defendant JP MORGAN AND CO. is a corporation established under the laws of the State of Delaware, with a principal place of business located in New York State.

35.     When in this Complaint reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

36.     Plaintiff is unaware of the names, identities, or capacities of the defendants sued as Does 1-50, but is informed and believes and thereon alleges that each such fictitiously-named defendant is responsible in some manner for the damages and abridgement of rights described in this Complaint. Plaintiff will amend its Complaint to state the true names, identities or capacities of such fictitiously-named defendants when ascertained.

## FACTUAL ALLEGATIONS

37.     In or around March of 2020, Plaintiff's Owner, Ryan Kull, became aware that the CARES Act had been signed into law. Mr. Kull, knowing that his business would be seriously

impacted by the COVID-19 crisis and the shelter-in-place orders, sought to obtain a PPP loan through a financial institution.

38.     On or about April 6, 2020, Mr. Kull submitted a complete, thorough, and timely application to DEFENDANT BANK to obtain a PPP loan. In doing so, Plaintiff relied on the representations of the of DEFENDANT BANK, whose written communications made it clear to Plaintiff as a consumer that PPP applications would be processed in a "first-come, first-served queue" and that they were focusing their efforts on "small businesses." Knowing he could only receive one PPP loan, and knowing that DEFENDANT BANK did not accept applications from businesses that had applied for PPP loans with any other financial institution, Plaintiff believed that DEFENDANT BANK would be his best choice for obtaining funding under the PPP.

39.     After submitting the PPP loan application, Plaintiff waited to get funded. While Plaintiff waited to get funded, Mr. Kull made strategic business decisions, invested his personal finances in his business, made personnel decisions, and took other steps in reliance on DEFENDANT BANK's representations that their lending would be focused on businesses with under 50 employees and would be "first-come, first served."

40.     On information and belief, DEFENDANT BANK did not focus their lending efforts on businesses with under 50 employees and did not process the applications in a "first-come, first-served" manner. DEFENDANT BANK did not follow the SBA Regulations or the intent of The Senate and Congress in distributing the PPP funds. Instead, DEFENDANT BANK moved high-dollar applications from large- and mid-sized companies to the "front of the line" in order to maximize their origination fees on these Federally backed loans at taxpayer expense. DEFENDANT BANK enriched themselves at the expense of Plaintiff and the putative class of PLAINTIFF SMALL BUSINESS OWNERS.

41.    Despite the fact that DEFENDANT BANK did not "focus" their lending efforts on businesses with under 50 employees and did not process the applications in a "first-come, first-served" manner, DEFENDANT BANK made numerous affirmative representations to their customers, potential applicants, and the public that they were in fact prioritizing loans to small businesses and processing applications on a first-come, first served basis. They made these affirmative representations to advance their own financial benefit to the detriment of their applicants and the consuming public. DEFENDANT BANK tried to cultivate public good will and to communicate they were following the law, when in fact the process was rigged so that the banks could maximize origination fees.

42.    PLAINTIFF SMALL BUSINESS OWNERS reasonably relied on DEFENDANT BANK's affirmative representations, communications, and advertising in making the choice to apply for their one PPP loan through DEFENDANT BANK, not knowing that, contrary to those representations,  DEFENDANT BANK would prioritize large borrowers, making it less likely that PLAINTIFF SMALL BUSINESS OWNERS would be able to obtain a loan through the PPP. As a result of their reliance on DEFENDANT BANK's representations, PLAINTIFF SMALL BUSINESS OWNERS suffered economic harm. Had PLAINTIFF SMALL BUSINESS OWNERS known that DEFENDANT BANK was prioritizing large loans, Plaintiff could have avoided the harm by applying for a loan at a different bank, such as a local community bank.

43.    As a result of the conduct of DEFENDANT BANK, PLAINTIFF's business suffered financial harm, wrongfully lost the opportunity to obtain funding that was likely to be forgiven by the Federal Government, lost the time value of those available PPP funds, lost access to capital in a difficult economic time, could not make payroll, and was forced to lay off talented

and hardworking employees that his company had invested valuable training resources in, and generally lost economic opportunities to conduct business due to lack of operating capital.

44.     As noted above, Plaintiff brings this action on behalf of itself and a state-wide class, defined as indicated below.

45.     **The Class Definition**: All businesses in the State of New York that met the criteria for receiving a loan under the PPP, i.e. met the criteria for eligibility and were not otherwise ineligible, between February 15 and June 30, 2020, who timely applied for a PPP loan through DEFENDANT BANK, whose applications were not processed and/or who were not issued loans in accordance with SBA Regulations (i.e. "first-come, first-served) and in accordance with the stated intent of the CARES Act (i.e. prioritizing "small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals".)

46.     Excluded from the Class are Defendants, as well as their officers, employees, agents, board members and legal counsel, and any judge who presides over this action (or spouse or family member of presiding judge), as well as all past and present employees, officers and directors of DEFENDANT BANK.

47.     Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

48. *Numerosity*: The Class is composed of thousands of businesses, whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties and the courts.

49. *Existence and Predominance of Common Questions of Fact and Law*: There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

    a. Did Defendants comply with all applicable SBA Regulations in processing applications for PPP funds and in distributing PPP funds in New York State?

    b. Did Defendants comply with their legal obligations under the terms of the CARE Act as third party intermediary administrators of the PPP funds?

    c. Did Defendants have a policy and/or practice of prioritizing large PPP loans to larger businesses to the detriment of the putative class?

    d. Did Defendants process PPP loan applications on a "first-come, first-serve" basis?"

    e. Did Defendants process applications in the order received, or did large PPP loans get moved "to the front of the line?"

    f. Did Defendants prioritize maximizing origination fees over achieving the goals of the CARE Act and the PPP?

    g. Did Defendants' conduct constitute an "Deceptive and Misleading Business Practice" under New York State General Business Law §§ 349-350 ?

    h. Did the transactional nature of the PPP application process create a duty on the part of the Defendants to disclose material information to the PPP loan applicants?

    i. Did Defendants disclose to the PPP applicants that the loan applications were not being processed on a first-come, first-served basis?

j.   Did Defendants possess exclusive knowledge of material facts, with respect to the PPP loan application process, that could not have been known to the Plaintiffs or the public (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

k.   Did Defendants actively conceal a material fact or facts from the Plaintiffs (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

l.   Did Defendants make a partial representation but also suppress some material fact or facts from the Plaintiffs (i.e. that the loan applications were not being processed "first-come, first-served" or that the banks were prioritizing large borrowers)?

m.   Whether Defendants conduct, as alleged herein, was intentional and knowing?

n.   Whether Class Members are entitled to damages and/or compensation; and, if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein;

o.   Whether Defendants are likely to continue to mislead PPP loan applicants and continue to violate SBA Regulations regarding processing and funding applications for PPP loans; and

p.   Whether Plaintiffs and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit

50.   *Superiority.* In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward class members and to make injunctive or corresponding declaratory relief appropriate for all class members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, class members could afford to seek legal redress of the wrongs complained herein on an individual

basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

51. *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Plaintiffs have all been deceived by Defendants' unfair, unlawful, and fraudulent PPP loan application and funding practices, as alleged herein. The factual and legal bases of Defendants' liability to Plaintiff and each class member are substantially similar, resulting in injury to Plaintiff and each Class Member as a result of Defendants' actions as described herein.

52. *Adequacy*: Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiffs will fairly and adequately represent and protect the interests of other class members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other class members.

53. *Ascertainability*: Plaintiff and the Plaintiff Class are informed and believe that Defendants keep extensive computerized records of its loan applications through, inter alia, computerized loan application systems and Federally mandated record keeping. Defendant has one or more databases through which a significant majority of Class Members, if not 100% of Class Members, may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## FIRST CLAIM

### On Behalf of The Class Against All Defendants

### (Violation Of New York State General Business Law §§ 349-350 – Deceptive and Misleading Business Practices)

54.     Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

55.     New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state ...." N. Y. Gen. Bus. Law § 349(a).

56.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

57.     DEFENDANT BANK committed the above-described acts willfully and/or knowingly.

58.     DEFENDANT BANK's wrongful and deceptive acts have caused financial injury and economic damages to Plaintiff and Class Members and unless enjoined, will cause further irreparable injury.

59.     DEFENDANT BANK's violations include, but are not limited to: a) Prioritizing large dollar PPP loans to large companies to the detriment of small business applicants in violation of SBA regulations and the intent of the Senate and Congress; b) Falsely and deceptively communicating to the public and PPP loan applicants that such loans were processed "first-come, first-served" when in fact they were not, and; c) Falsely and deceptively communicating to the

public and PPP loan applicants that Defendant Bank was focusing its efforts on facilitating loans to small businesses when in fact it was not.

60.     As a direct and proximate result of the above violations of § 349 of the General Business Law, Plaintiff and class members have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual damages, costs and attorney's fees.

### SECOND CLAIM

**On Behalf of The Class Against All Defendants**

**(Unjust Enrichment)**

61.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs and further alleges as follows.

62.     Unjust enrichment is a quasi-contract claim designed to prevent "a person [from] enrich[ing] himself unjustly at the expense of another." *IDT Corp. v. Morgan Stanley Dean Witter & Co*., 12 N.Y.3d 132, 879 N.Y.S.2d 355, 907 N.E.2d 268, 274 (2009). To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir.2000).

63.     Defendants were Unjustly Enriched[12] at the expense of the Class when they knowingly and falsely induced small business owners, including the Plaintiff and the Class, to apply for PPP loans by misleading them about the process and prioritizing large loans to large

---

[12] *Briarpatch Ltd. v. Phoenix Pictures,* Inc., 373 F.3d 296 (2nd Cir., 2004) ("The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.

businesses in order to enrich themselves and maximize origination fees from the Federal Government at the expense of PPP applicants.

## THIRD CLAIM

### On Behalf of The Class Against All Defendants

### (Fraudulent Concealment)

64.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

65.     To state a claim for Fraudulent Concealment, a plaintiff must allege that the defendant had a duty to disclose material information and failed to do so, that the omission was intentional so as to defraud or mislead the plaintiff, that the plaintiff relied on the omission and that the plaintiff suffered damages.

66.     Due to the nature of the transaction and contemplated contract between them, Defendants owed a duty to Plaintiff and the Class to reasonably disclose facts material to that transaction and to not hide or obscure facts material to that transaction.

67.     At all relevant times, Defendants possessed and had exclusive knowledge of material facts not known to the Plaintiff and Class Members, i.e. the knowledge of how the PPP applications were going to be processed, prioritizing large businesses borrowing large amounts of money and not first-come, first-served. Defendants' exclusive knowledge of these facts rendered the transaction without disclosure inherently unfair. The knowledge in question was peculiarly within the knowledge of Defendants and was not such that could have been discovered by Plaintiff through the exercise of ordinary intelligence.

68.     At all relevant times, Defendants actively concealed those material facts from the public and their PPP loan applicants, by intentionally omitting to disclose such facts and by intentionally misleading the Plaintiff and Class with affirmative statements that were not true.

69.     Even if Defendants made some partial representations, Defendants still made efforts to suppress material facts and did not fully disclose and contextualize the material facts known only to them.

70.     Plaintiff and the Class reasonably relied on Defendants' representations in choosing to apply for a PPP loan with DEFENDANT BANK. As a direct result of Defendants' fraudulent concealment of facts material to the PPP loan application transaction, Plaintiff and the Class were induced to apply with Defendants and as a proximate result suffered economic and financial harm

## FOURTH CLAIM

### On Behalf of The Class Against All Defendants

### (Punitive Damages)

71.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs and further alleges as follows.

72.     Punitive damages are available where the plaintiff demonstrates "conduct that was directed to the general public or that evinced the requisite 'high degree of moral turpitude' or 'wanton dishonesty.' " *Williams v. Coppola*, 23 A.D.3d 1012, 1013, 804 N.Y.S.2d 172 (4th Dep't 2005) leave dismissed 7 N.Y.3d 741, 819 N.Y.S.2d 875, 853 N.E.2d 246 (2006) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961)).

73.     There may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability. (*See*, *e.g.*, *Bell v. Preferred Life Soc*., 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15; *Day v. Woodworth*, 13 How.

363, 371, 54 U.S. 363, 371, 14 L.Ed. 181; *Greene v. Keithley*, 8 Cir., 86 F.2d 238, 241; *Laughlin v. Hopkinson*, 292 Ill. 80, 126 N.E. 59s; *Whitehead v. Allen*, 63 N.M. 63, 313 P.2d 335; *Saberton v. Greenwald*, 146 Ohio St. 414, 66 N.E.2d 224, 165 A.L.R. 599; *Craig v. Spitzer Motors*, 109 Ohio App. 376, 160 N.E.2d 537; Ann., 165 A.L.R. 614.)

74.     Courts sanction an award of such damages in a fraud and deceit case where the defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply an unlawful indifference to civil obligations. (*See Kujek v. Goldman*, 150 N.Y. 176, 44 N.E. 773, *supra*; see, also, *Hamilton v. Third Ave. R. R. Co*., 53 N.Y. 25, 28, *supra*.)

75.     The Plaintiff and Class believe the standard of "wanton dishonesty" has been met in that it is alleged that Defendant Bank, a highly sophisticated financial institution that knew exactly what the rules and regulation were, gamed the system to enrich themselves with tax dollars, at the expense of small business owners who the PPP funds were intended to benefit, to line their own pockets, during a time of national crisis. Quite simply, the banks knew better, but put profits over their duties and the wellbeing of the Country.[13]

---

[13] See also *Walker v. Sheldon*, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (N.Y., 1961): Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future. (See, e. g., Toomey v. Farley, 2 N.Y.2d 71, 83, 156 N.Y.S.2d 840, 848, 138 N.E.2d 221, 227; *Krug v. Pitass*, 162 N.Y. 154, 161, 56 N.E. 526, 528; Hamilton v. Third Ave. R. R. Co., 53 N.Y. 25, 28; *Oehlhof v. Solomon*, 73 App.Div. 329, 333-334, 76 N.Y.S. 716, 719-720.) Moreover, the possibility of an award of such damages may not infrequently induce the victim, otherwise unwilling to proceed because of the attendant trouble and expense, to take action against the wrongdoer. Indeed, such self-interest of the plaintiff has been characterized as 'Perhaps the principal advantage' of sanctioning punitive damages because it 'leads to the actual prosecution of the claim for punitive damages, where the same motive would often lead him to refrain from the trouble incident to appearing against the wrongdoer in criminal proceedings'. (*McCormick*, Damages (1935), pp. 276-277.) The list of actions in which punitive damages have been permitted in this State is long (see, e. g., *Toomey v. Farley*, 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N.E.2d 221, supra (libel); *Gostkowski v. Roman Catholic Church*, etc., 262 N.Y. 320, 186 N.E. 798 (desecration of a grave); *Pickle v. Page*, 252 N.Y. 474, 169 N.E. 650, 72 A.L.R. 842, affg. 225 App.Div. 454, 459-460, 233 N.Y.S. 461, 466-467 (forcible abduction of a minor child); *Kujek v. Goldman*, 150 N.Y. 176, 179, 44 N.E. 773, 774, 34 L.R.A. 156 (fraud and deceit);

## FIFTH CLAIM

### On Behalf of The Class Against All Defendants

### (Costs and Prejudgment Interest)

76.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs and further alleges as follows.

77.     Plaintiff also seeks prejudgment interest of 9% pursuant to N.Y.C.P.L.R. §§ 5001, 5004. In a case such as this one, "state law governs the award of prejudgment interest." *Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir.2008) (citing *Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir.2000)). CPLR § 5001 operates to permit an award of prejudgment interest from the date of the unlawful taking of the Federal Government's money to the detriment of the Plaintiff and Class.

78.     In any event, under § 5001(b), "interest upon damages" is computed not based on the date of the accrual of the action but rather "from the date incurred." Section 5001(b) further provides that "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."

79.     That is each of the Class Members shall be awarded a sum from the date that the Defendant Bank funded any loans under the PPP to large businesses or to any business outside of a first-come, first-served order.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

1. For an order certifying the class as defined above, appointing Plaintiff as class representative for the class, and appointing Plaintiff's counsel as class counsel for the class;

2.  For an order declaring Defendants' actions to be unlawful;

3.  For equitable relief to Plaintiff and Class Members;

4.  For injunctive relief prohibiting Defendants from engaging in the misconduct described herein;

5.  For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and class members, including disgorgement, unjust enrichment, and all other available relief under applicable law;

6.  For an award of treble damages pursuant to 18 U.S.C. § 1964(c) and any other applicable law;

7.  For an award of punitive damages pursuant to applicable law;

8.  For reasonable attorney's fees and expenses as permitted by applicable statutes and law;

9.  For taxable costs;

10. For pre and post-judgment interest as allowed by law; and

11. For any other relief the Court deems just.

Dated: April 20, 2020

*Respectfully submitted,*

**STALWART LAW GROUP**

_____

Dylan Ruga (DR1308)
1100 Glendon Ave., Ste. 1840
Los Angeles, CA 90024
Phone:  (310) 954-2000
Email:  dylan@stalwartlaw.com

*Attorneys for Plaintiff and Proposed Class Representative*

## JURY DEMAND

RYAN M. KULL LICENSED CLINICAL SOCIAL WORK LLC hereby demands a jury trial as to all issues so triable.


Dated: April 20, 2020          *Respectfully submitted,*

                                                 **STALWART LAW GROUP**

                                                 _____

                                                 Dylan Ruga (DR1308)
                                                 1100 Glendon Ave., Ste. 1840
                                                 Los Angeles, CA 90024
                                                 Phone:  (310) 954-2000
                                                 Email:  dylan@stalwartlaw.com

                                                 *Attorneys for Plaintiff and Proposed Class*
                                                 *Representative*